JOSEPH SHELDON v. C. M. DAVEY AND EVAN D. JONES.

[IN CHANCERY.]

*Tenancy from Year to Year.   Notice to Quit.   Accounting.*

J., one of the defendants, having a lease of and occupying a certain portion of the orator's slate quarry for a term of years, paying as rent therefor a stipulated price per square for all the slate quarried and manufactured therefrom, without obtaining the consent of the orator, occupied a certain other portion of said quarry adjacent to said leased premises, for several years and quarried and manufactured slate therefrom, paying the orator therefor the same price per square as stipulated in said lease and paid for those taken from the leased premises. *Held* that such use and occupation of said portion of the quarry outside of said leased premises, under the circumstances of this case, did not constitute a tenancy from year to year, and that the only interest J. acquired outside of said leased premises was the right to take out the slate from a section of the quarry, which, with the knowledge and acquiesence of the orator, he had been to the expense of uncovering, and that he was not entitled as a matter of right to six months' notice to quit, but to a reasonable time to quarry and manufacture the slate he had so uncovered.

J. having agreed to quit the portion of the quarry in dispute on the 1st day of July, 1864, thereby waived all claim for further time to work that part of the quarry, and all claim for the possession of it after that date.

*Held*, that the defendants must account for all slate quarried and manufactured by them outside of said leased premises since the 1st day of July, 1864, at what they were worth at the respective times when the same was taken from the quarry.

BILL IN CHANCERY.  The bill set forth that the orator was the owner of a valuable slate quarry, situated in Fairhaven, in the county of Rutland; that on the 24th day of February, 1859, he leased a certain portion thereof to the defendant Jones, by lease in writing, thereby giving said Jones the right to quarry and manufacture slate therefrom at a certain price per square, the orator agreeing to haul said slate to the railroad depot and reserving a lien thereon to secure the payment of the stipulated price, for the term from said date to September 1, 1868; that said Jones entered into possession of said leased premises and quarried slate there-

from until about the 1st day of October, 1861, when without authority he entered upon a certain other portion of said quarry, south of and adjacent to said leased premises, and quarried slate therefrom without right until the 1st day of June, 1864, when he sold and conveyed an undivided two thirds of his interest in said leased premises and also an undivided two thirds of his pretended interest outside thereof to the defendant Davey; that said Jones while quarrying outside of said leased premises was from time to time forbidden by the orator to quarry there, but kept on and accounted and settled with the orator for the slate made therefrom the same as if made from the leased premises and according to the terms of said lease; that on the 15th day of May, 1864, the orator gave said Jones notice that he must quit that portion of the quarry outside of said leased premises, else he should commence a prosecution against him therefor; that in consideration the orator would forbear to prosecute him Jones agreed to quit the possession thereof and stop making slate therefrom on the 1st day of July, 1864; that said Davey and Jones from said first day of July, both by night and by day, held forcible and unlawful possession of said portion of said quarry outside of said leased premises, and quarried and manufactured a quantity of slate therefrom and threatened to continue quarrying therein and to keep the orator out of the possession thereof by force; that said portion of said quarry had been worked in a southerly direction from said leased premises by sections, the sections being narrow and running easterly and westerly across the quarry, and the defendants had been from time to time in possession of no part of said portion of said quarry south of the section upon which they were at work, and the defendants were insolvent.

*Prayer* for an accounting for all slate made and disposed of by the defendants outside of said leased premises since July 1, 1864, and for an injunction to restrain the defendants from disposing of the slate on hand made therefrom since said 1st day of July, and from further quarrying therein and obstructing and hindering the possession and use thereof by the orator.

The answers of the defendants admit some of the allegations of the bill and deny others, and aver that the defendant Jones,

with the knowledge and consent of the orator, and with his pecu-
niary assistance to some extent, expended several thousand dollars
in developing said portion of said quarry outside of said leased
premises more than he realized from all the slate made therefrom,
and which will be an outright loss unless he can have the occupa-
tion and use thereof and the slate therein ; and also that said
Jones, on the 22d day of February, 1864, with the knowledge and
consent of the·orator, sub-let by contract in writing a portion of
the quarry in dispute to certain parties to work at a certain price
per square, and that said Jones had made large advances to said
parties to enable them to carry out said contract:

The answers were traversed, and testimony was taken by both
parties. The material facts proved are stated in the opinion of
the court except that it appears from the evidence that the portion
of the quarry in dispute had been worked by sections, the dirt
and top or waste rock being first taken off from a section of the
quarry, which operation is attended with more or less expense ;
the section is then finished, all the slate being taken therefrom be-
fore another one is commenced. The quarry was thus worked
section by section, the sections being narrow and running easterly
and westerly across the same. The case was heard on bill, an-
swers, replication and proofs. The court of chancery at the Sep-
tdmber term, 1866, KELLOGG, chancellor, decreed *pro forma* that
the bill be dismissed with costs, from which decree the orator ap-
pealed.

*Prout & Dunton*, for the orator.

*Edwin Edgerton*, for the defendants.

Argued at the January term, 1867.
The opinion of the court was delivered by
WILSON, J. This is a bill in chancery to restrain the defend-
ants from further quarrying slate upon the quarry in dispute ;
from selling the slate manufactured therefrom, and for an account.
The principal question is, whether the interest acquired by the
defendant Jones in the premises, by his entry upon and occupation

of the quarry outside of the written lease, has expanded into a tenancy from year to year. It is insisted by the defendants that there is such an implied tenancy, arising from the manner of the. entry upon and occupation of the premises by Jones, and from acquiescence on the part of the orator in such occupancy as entitles the defendants to the possession of the premises. It appears that the defendant Jones, in the fall of 1859 or spring of 1860, commenced quarrying and manufacturing slate upon that part of the quarry in dispute, and continued to manufacture slate thereon until some time in the spring of 1864. The orator drew the slate from the quarry to the depot in Fairhaven, upon the same terms as those prescribed in the written lease. It appears that Jones, from time to time, during this entire period, made statements to the orator of the slate quarried and manufactured from that part of the quarry, and paid him for each square, at the rate specified in the written lease. The written lease provided, among other things, that the orator should have a lien and claim upon all the slate which should be manufactured from the quarry, covered by the aforesaid lease, by Jones and his assigns, for whatever should be due for slate manufactured thereon by him or them, and drawn to the railroad by the orator, and that the orator should have a lien upon the slate for any and all advances which he should make to Jones from time to time, to enable him to carry on the business of working the quarry embraced in said lease. The orator did make advances from time to time, according to the understanding of the parties, as expressed in said instrument. It is unquestionably true that a part of the money so advanced was expended by Jones in developing or in quarrying and manufacturing slate from that part of the quarry in dispute. The orator asserted and enforced the same lien upon the slate manufactured from that part of the quarry in dispute, that the terms of the lease gave him upon the slate quarried and manufactured from the territory covered by said lease. The defendant Jones agreed with John S. Jones and others, (exhibit 1,) and with Owens and others, (exhibit 2,) to work portions of the quarry in dispute. The orator was, soon after the making of the agreements contained in said exhibits, informed that some arrangement had been entered into by said par-

ties in respect to quarrying slate, but it does not appear that he was informed of the terms of their agreements until late in the spring of 1864. We do not find any express agreement between the orator and Jones for the occupancy by the latter of any portion of the premises in question, nor do we find that the orator ever consented to Jones making any opening of the quarry outside of the leased premises. It appears that Jones entered upon the premises in dispute and commenced working or uncovering portions of that part of the quarry, without the knowledge or consent of the orator. The orator, soon after Jones commenced quarrying there, was informed of his operations, and suffered him to go on and finish the sections commenced, and treated the slate when taken out the same as those taken from that part of the quarry covered by the written lease. It is clear that all the openings made by Jones of the disputed quarry were made without any agreement with or authority from the orator, but he having commenced quarrying there, was suffered by the orator to go on and remove what slate he had developed.

This appears to have been the character of his entries upon and occupation of that part of the quarry, from the time of his first entry to the time the orator notified him in the spring of 1864 to quit the premises. There was no agreement to pay rent; no recognition of yearly rent, but payment was made per square for the slate actually manufactured. No express or implied agreement is shown between these parties which would have prevented Jones from quitting the quarry at any time, and it will hardly be claimed that the orator could compel the defendants to pay rent any longer than they occupy the quarry, or to pay for slate not manufactured or quarried. It is said that the defendant Jones understood he was to have the use and occupancy of that part of the quarry in dispute until the expiration of the written lease. But we think he could not well understand or infer that he was entitled to such extended use and occupation of that part of the quarry, in the absence of any contract, and without any obligation on his part to work the quarry during the whole of that period. There is nothing in the case which shows that the orator expected, or that he had any right to expect, the defendant would make a new open-

ing when he had finished one already commenced. We do not find that the orator made any advances to the defendant to enable him to develop any portion of the quarry outside of the written lease. That he made advances to him, while he was quarrying and manufacturing slate he had uncovered without permission, is true, but those advances are so fully explained by the circumstances under which they were made that they constitute no recognition of any right on the part of Jones to extend his operations. The drawing of the slate, the acceptance of the same price for those slate that was stipulated for the slate in the leased quarry, and the enforcement of the lien by the orator, are consistent with limiting or restricting the defendant's right or interest to such portions of the quarry as he had already developed. It is insisted by the defendants that the orator ratified and adopted the leases marked " 1 " and " 2," and is estopped from asserting any claim inconsistent with the full enjoyment of the benefit of those leases by the respective parties thereto. The defendants can claim no right as against the orator by reason of either of those leases. As to the other parties thereto, it is not shown that they were, by any act or declaration of the orator, induced to enter into any such stipulations with the defendant Jones. The orator had made no line on the disputed quarry, nor assented to any line there to which either Jones or his lessees might work ; but the right of the defendant Jones, and the extent of his right to the quarry, had become matter of record, of which the sub-lessees had notice, or were affected with notice. If they saw an opening of the quarry made by Jones outside of his written lease, they had no right to infer that his right to that part of the quarry extended beyond such opening. They knew, or had the means of knowing, that the portion of the quarry they stipulated to work was not covered by the written lease of the orator, and they should have made inquiry of the orator, before entering into any such contract with the defendant Jones, as to Jones' right and the extent of his right to the premises. We do not find that the orator had such knowledge or information as to the extent of the defendant Jones' claim or that of his lessees, as would justify us in holding that the orator acquiesced in his or their occupancy of the premises.

We are of opinion that the interest acquired by the defendant Jones has not expanded into a tenancy from year to year. What interest then did the defendant Jones acquire in or to the quarry in dispute? He acquired an interest in that part of the quarry to which his operations were from time to time confined, so far as the orator, by allowing him to work the sections commenced and receiving pay for the slate manufactured there, ratified his acts. There is nothing in the case to show that the orator was under any obligation to allow the defendant to go on and quarry slate upon this part of the premises, except that if he allowed the defendant to commence a section, or allowed him to go on quarrying a section he had commenced, he was bound to let him finish it. But the defendant's interest in this part of the quarry extended no farther than the openings made by him, and subsequently ratified by the orator. Beyond such openings and quarrying thereon as were ratified by the orator, the defendant had no interest, or right to go. His right and interest ceased when he had finished the sections the orator allowed or suffered him to work, and he could claim no right to uncover any other part of the quarry in dispute. This being the nature and extent of the defendant Jones' right or interest, he was not, as a matter of course, entitled to six months' notice to quit. He was entitled to reasonable time to quarry and manufacture the slate he had uncovered, and the orator had allowed him to commence working. We think he had reasonable time, prior to the 1st day of July, 1864, to finish quarrying and manufacturing the sections commenced before the orator gave him the notice to quit. This was all the time he could legally require, and the defendants could not require, nor could either of them require, the orator to give him or them notice to quit in order to terminate his or their right to commence opening and quarrying a new section, because they never had any such right. But there is another ground on which the orator is entitled to relief. It is clearly established by the evidence that Jones agreed to quit the quarry in dispute on the 1st day of July, 1864. He thereby waived all claim for further time to work that part of the quarry, and all claim for the possession of it after that date.

We are of opinion that the orator is entitled to the relief prayed

for ; and that the defendants ought to account for all the slate taken from the quarry, outside of the written lease, since the 1st day of July, 1864.  The result is that the decree of the chancellor is reversed, and the cause is remanded to the court of chancery, with a mandate directing an interlocutory decree that the defendants account before a master for all the slate taken from the quarry, outside of the written lease, since the first day of July, 1864.  The defendants are to account for the slate quarried and manufactured on that part of the quarry prior to July 1st, 1864, and taken away since that date, at fifty cents per square ; and they are to account for all slate quarried, manufactured and taken away from that part of the quarry since the 1st day of July, 1864, at what the slate were worth at the respective times when the same were taken from said quarry.

NOTE.  The special master appointed to take the account in this case reported that the working of slate quarries is attended with considerable risk, owing to the liability to encounter unsound rock, etc., and that the portion of the quarry in dispute at any time *prospectively*, during the period it was occupied and worked by the defendant, was not worth and could not have been leased at a higher rate than seventy-five cents per square ; that no one would have engaged in advance to pay a higher rate, taking the then unknown risk of working the quarry, and on this basis of computation found due the orator $3,121.83

He also reported the market value of the slate made by the defendants from said quarry, from month to month delivered at the railroad depot in Fairhaven, (which he found was a fair and reasonable price therefor,) and the actual cost of manufacturing and delivering the same ; and computing the damages on this basis, by deducting said cost from said market value, he found due the orator $13,610.32.

The master also reported that when the defendants quit possession of the quarry in December, 1866, they left slate rock enough for one hundred squares of slate exposed to the action of the frost whereby the same was destroyed, and that it was worth $200 ; that the defendants also left a large amount of rubbish in the quarry which had to be removed at an expense of $300 to the orator.

The extent of the defendants' liability on the aforesaid facts was submitted by the master to the court, and the amount found due the orator by him was in the alternative depending upon the decision of the court.

The court of chancery at the September term, 1869, PIERPOINT, chancellor, decreed *pro forma* that the defendants pay the orator $14,110.32, it being the market value of the slate delivered at the depot, after deducting the cost of manufacturing and delivering the same, together with the value of the slate destroyed by the frost, and the expense of removing the rubbish from the quarry, from which decision the defendants appealed.

The case was argued at the January term, 1870, of the supreme court, by E. J. Phelps for the defendants, and W. C. Dunton for the orator.

The court, without delivering any opinion, reversed the decree of the chancellor with costs in the supreme court, and held that the defendants should pay the larger amount found due by the master for the slate, it being their market value at Fairhaven depot, after deducting the cost of manufacturing and delivering them, but disallowed the claim for the slate destroyed by the frost, and for removing the rubbish from the quarry, and remanded the case by mandate directing that a decree pass for the orator on the report of the master for the sum of $13,610.32, and interest from the date to which interest was computed by the master.                  REPORTER.